**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| RANDAL L. ROLAND, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:13-CV-588 |
| | § | |
| FLAGSTAR BANK, FSB, | § | |
| | § | |
| Defendant. | § | |

## AMENDED MEMORANDUM AND ORDER

Pending before the court is Defendant Flagstar Bank, FSB's ("Flagstar") Motion to Dismiss (#5), wherein it contends that Plaintiff Randal L. Roland ("Roland") cannot prevail on his causes of action for breach of contract and negligent misrepresentation. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Flagstar's motion to dismiss should be granted in part and denied in part.

I.   Background

This dispute concerns a home equity loan and an attempted foreclosure. Roland owns a residence (the "Property") in Beaumont, Texas. In 2006, Roland took out a home equity loan with Loan America, Inc., secured by the Property. Roland made payments on the note for several years, and, during that time, Loan America assigned the note to Flagstar.

In January 2013, Roland encountered financial difficulties and was no longer able to make his full monthly payments. Roland maintains that after notifying Flagstar of the issue, Flagstar agreed to a forbearance plan (the "Plan") that reduced his monthly payments for three months. Attached to Roland's original petition is a letter, dated April 19, 2013, from Flagstar memorializing the Plan. The letter states that Roland "ha[s] been approved for a Forbearance

Plan" and specifies that he may make a monthly payment of $355.73 in lieu of his monthly

mortgage payment for three months.  The letter further explains how Roland would accept the

offer:

> **To Suspend Foreclosure**
> You must contact us at (800) 393-4887 or in writing at the address provided below
> to indicate your intent to accept this offer.  If you contact us by **05/03/2013** to
> indicate your intent to accept this offer, we will not refer your loan to foreclosure,
> or if your loan has been referred to foreclosure, we will suspend the next legal
> action in the foreclosure proceedings.
>
> However, if you do not respond by **05/03/2013**, foreclosure proceedings may
> continue and a foreclosure sale may occur, even if such sale is scheduled prior to
> **06/01/2013**, the due date of your first temporary reduced payment and you failed
> to respond by **05/03/2013**, this offer has been revoked.
> **TIME IS OF THE ESSENCE**.

(emphasis in original).  Despite the confusing wording, these paragraphs suggest that Roland had

to contact Flagstar by mail or telephone to accept the offer.  Nevertheless, a second page of the

letter, which Roland attached to his original petition, describes the method of accepting the offer

differently:

> **To Accept This Offer**
> If you have notified us of your intent to accept the offer by **05/03/2013** or, if you
> have not notified us and a foreclosure sale has not occurred, you must send in your
> first temporarily reduced payment on or before **06/01/2013**.
>
> * * *
>
> If you fail to make the first temporarily reduced payment by **06/01/2013**, this offer
> has been [sic] revoked and foreclosure proceedings may continue and a foreclosure
> sale may occur.

(emphasis in original).

A transaction history report submitted with Roland's original petition shows that he made

timely monthly payments of $711.46 through December 12, 2012, but he did not make any further

payments until February 28, 2013.  Thereafter, Roland did not pay on the note until May 29, 2013, when he began to tender monthly payments of $360.00.  In total, Roland made three $360.00 payments, one each in the months of May, June, and July 2013.

Roland alleges that Flagstar told him that it was agreeing to the Plan in order to give each party time to craft a loan modification that would account for his financial strain.  Roland maintains that although he was attempting to "work out" the modification and was making payments pursuant to the Plan, Flagstar's true intent was to foreclose on the Property without regard to the outcome of these negotiations.  Indeed, Flagstar initiated foreclosure litigation against Roland on July 11, 2013, on the basis that Roland was delinquent on his loan payments.

On August 22, 2013, Roland filed his original petition alleging causes of action for breach of contract and misrepresentation against Flagstar.  Roland asserts that Flagstar breached its agreement to the Plan as well as a separate oral agreement to modify the note at some future time.  His misrepresentation claim is premised on Flagstar's engaging in "deceptive practices calculated to make [Roland] believe he was working through the modification with [Flagstar] . . . ."  In addition to actual and consequential damages as well as attorney's fees, Roland requests specific performance to compel Flagstar to modify the note.

 Flagstar filed the instant motion on September 27, 2013, presenting multiple reasons for dismissing Roland's claims.  Flagstar contends that the breach of written contract claim fails because:  (1) Roland did not plead that he properly accepted the Plan; (2) the agreement embodied by the Plan does not comply with the statute of frauds; and (3) his failure to perform under the contract precludes a viable claim for breach of contract.  Flagstar also maintains that the breach of oral contract claim concerning a possible loan modification should be dismissed for similar

reasons.  Lastly, Flagstar argues that Roland's negligent misrepresentation claim fails because it is premised on a suggestion of future conduct which is not actionable, its reliance element is pleaded in a conclusory fashion, and it is barred by the economic loss rule.[1]  Roland responds to these arguments by stating that he has pleaded sufficient facts to sustain his causes of action.

II.   Analysis

   A.   Rule 12(b)(6) Standard

   A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002).  It is not a procedure for resolving contests about the facts or the merits of a case.  *See* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE:  CIVIL 2d § 1356, at 294 (1990).  In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013); *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008), *cert. denied*, 556 U.S. 1152 (2009); *Ramming*, 281 F.3d at 161. Nevertheless, "the plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Ramming*, 281 F.3d at

---

[1] Flagstar also analyzes Roland's "misrepresentation" claim as a fraud claim.  The court, however, construes Roland's petition as alleging only a claim for negligent misrepresentation.

4

161 (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), *cert. denied*, 552 U.S. 1182 (2008).

Generally, the court may not look beyond the four corners of the plaintiff's pleadings. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  The court, may, however, consider "documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  Moreover, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), *abrogated on other grounds by Twombly*, 550 U.S. at 563)).

Furthermore, "a complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983); *accord Jones v. Bock*, 549 U.S. 199, 215 (2007); *La Porte Constr. Co. v. Bayshore Nat'l Bank of La Porte*, 805 F.2d 1254, 1255 (5th Cir. 1986).  "Although defendants bear the burden of pleading and proving affirmative defenses, where facts alleged in plaintiff's pleadings make clear that a claim is barred, dismissal under Rule 12(b)(6) may be granted." *In re Dynegy, Inc. Secs. Litig.*, 339 F. Supp. 2d 804, 819 (S.D. Tex. 2004); *see also*

*Jones*, 549 U.S. at 215; *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003), *cert. denied*, 540 U.S. 1161 (2004).

A Rule 12(b)(6) motion to dismiss must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. *Twombly*, 550 U.S. at 555. Accordingly, a district court should not dismiss a complaint for failure to state a claim unless a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *accord Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *Harold H. Huggins Realty, Inc.*, 634 F.3d at 796. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. In other words, to state a cognizable cause of action, the complaint must allege sufficient facts to "nudge" the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

B.    <u>Alleged Breach of Written Contract</u>

Flagstar argues that Roland has not pleaded a plausible breach of contract claim. Flagstar contends that no contract was created because the Plan was merely offered, not accepted. Flagstar further maintains that, even if it were accepted, the terms of the Plan are unenforceable under the

6

statute of frauds because Flagstar did not sign it.  In addition, Flagstar asserts that Roland's breach

of contract claim must be rejected because he failed to perform as promised (*i.e.*, failed to make

the required payments) under the original note.

        1.     <u>Acceptance of the Agreement</u>

Under Texas law, the elements of a valid contract are:

(1) an offer;

(2) an acceptance in strict compliance with the terms of the offer;

(3) a meeting of the minds;

(4) each party's consent to the terms; and

(5) execution and delivery of the contract with the intent that it be mutual and binding.

*Levetz v. Sutton*, 404 S.W.3d 798, 803 (Tex. App.—Dallas 2013, pet. denied); *Cessna Aircraft

Co. v. Aircraft Network, LLC*, 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied).  "A

binding and enforceable contract is formed when, after an offer is made, the offer is

unconditionally accepted and valuable consideration passes between the parties." *Turner-Bass

Assocs. v. Williamson*, 932 S.W.2d 219, 222 (Tex. App.—Tyler 1996, writ denied); *see Belew

v. Rector*, 202 S.W.3d 849, 854 (Tex. App.—Eastland 2006, no pet.); *Buxani v. Nussbaum*, 940

S.W.2d 350, 352 (Tex. App.—San Antonio 1997, no writ).  The essence of a contract is mutual

assent or agreement.  *See Nat'l Cas. Co. v. Lane Express, Inc.*, 998 S.W.2d 256, 262, 264 (Tex.

App.—Dallas 1999, pet. denied); *Turner-Bass Assocs.*, 932 S.W.2d at 222.

Flagstar argues that no valid contract exists because Roland has not pleaded any facts or

presented any evidence to demonstrate that he accepted the Plan.  According to Flagstar, Roland

was required to contact a Flagstar representative by telephone or by mail in order to accept the

Plan. Roland's petition simply alleges that he and Flagstar were in a contractual relationship and that he made the three required payments; it does not mention whether he called or sent a letter to notify Flagstar of his acceptance.

To resolve this issue, the court will apply Texas law on the interpretation of contracts in construing the language of the Plan. *See Aubris Res. LP v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 483, 486 (5th Cir. 2009); *H.E. Butt Grocery Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 150 F.3d 526, 529 (5th Cir. 1998) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938)). An unambiguous contract must be interpreted by the court as a matter of law. *See Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009); *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)); *Triton 88, L.P. v. Star Elec., LLC*, 411 S.W.3d 42, 57 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)); *accord Wolf Hollow I, L.P. v. El Paso Marketing, L.P.*, 409 S.W.3d 879, 885 (Tex. App.—Houston [14th Dist.] 2013, pet. filed).

The court's primary concern when construing a contract is to give effect to the written expression of the parties' intent. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 842 (5th Cir. 2012); *Certain Underwriters at Lloyd's v. Oryx Energy Co.*, 203 F.3d 898, 901 (5th Cir. 2000) (citing *Coker*, 650 S.W.2d at 393); *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Frost Nat'l Bank v. L & F Distributors, Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005); *Valence Operating Co.*, 164 S.W.3d at 662. "The cardinal

rule to be observed in the construction of contracts is to ascertain and give effect, whenever possible, to the intention of the parties, as that intention is revealed by the language used in the agreement." *Lacy v. Ticor Title Ins. Co.*, 794 S.W.2d 781, 786 (Tex. App.—Dallas 1990, writ denied) (citing *Birdwell v. Ferrell*, 746 S.W.2d 338, 339-40 (Tex. App.—Austin 1988, no writ)); *accord In re G.D.H*, 366 S.W.3d 766, 769 (Tex. App.—Amarillo 2012, no pet.).

When construing a contract, the intention of the parties is to be gathered from the instrument as a whole. *See ACE Am. Ins. Co.*, 699 F.3d at 842; *Seagull Energy E & P, Inc.*, 207 S.W.3d at 345; *SAS Inst., Inc.*, 167 S.W.3d at 841; *In re G.D.H.*, 366 S.W.3d at 769. The "court is bound to read all parts of a contract together to ascertain the agreement of the parties." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994); *Fawcett, Ltd. v. Idaho N. & Pac. R.R. Co.*, 293 S.W.3d 240, 244 (Tex. App.—Eastland 2009, pet. denied). Each part of the contract should be given full effect. *See Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 296 (5th Cir. 2010); *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996). The court should "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Italian Cowboys Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011); *accord Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998) (noting that courts must strive to "give meaning to every sentence, clause, and word to avoid rendering any portion inoperative"). "'No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.'" *SAS Inst., Inc.*, 167 S.W.3d at 841 (quoting *Coker*, 650 S.W.2d at 393); *accord Compliance Source, Inc. v. GreenPoint Mortg. Funding, Inc.*, 624 F.3d

252, 259 (5th Cir. 2010); *Seagull Energy E & P, Inc.*, 207 S.W.3d at 345.  This is merely an application of the long-established rule in Texas that "'[n]o one phrase, sentence or section [of a contract] should be isolated from its setting and considered apart from the other provisions.'" *Forbau*, 876 S.W.2d at 134 (quoting *Guardian Trust Co. v. Bauereisen*, 121 S.W.2d 579, 583 (Tex. 1938)).

"Whether a contract is ambiguous is a question of law for the Court to decide." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010); *S. Tex. Med. Clinics, P.A. v. Phycor, Inc.*, 113 F. Supp. 2d 1094, 1098 (S.D. Tex. 2000) (citing *Weingarten Realty Investors v. Albertson's, Inc.*, 66 F. Supp. 2d 825, 839 (S.D. Tex. 1994)).  The determination of the ambiguity of a contract "is a legal question decided by examining the entire contract in light of the circumstances present when the parties entered the contract." *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998) (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821-23 (Tex. 1997)); *see U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 404 (5th Cir. 2000); *Exxon Corp. v. W. Tex. Gathering Co.*, 868 S.W.2d 299, 302 (Tex. 1993).

Under Texas law, a contract is ambiguous if, after applying the established rules of interpretation, the written instrument "remains reasonably susceptible to more than one meaning." *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980); *Am. Int'l Specialty Lines Ins. Co.*, 620 F.3d at 562; *U.S. Quest Ltd.*, 228 F.3d at 404; *Lenape Res. Corp.*, 925 S.W.2d at 574;  *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987); *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979) (requiring a "genuine uncertainty" as to which of two meanings is proper).  A "written instrument is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning, taking into consideration the

circumstances present when the instrument was executed." *Towers of Tex., Inc. v. J & J Sys., Inc.*, 834 S.W.2d 1, 2 (Tex. 1992); *see U.S. Quest Ltd.*, 228 F.3d at 404 (citing *Childers v. Pumping Sys., Inc.*, 968 F.2d 565, 569 (5th Cir. 1992)). In this regard, "[l]anguage should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated." *Reilly*, 727 S.W.2d at 529 (citing *Fox v. Thoreson*, 398 S.W.2d 88, 92 (Tex. 1966)).

An ambiguity does not arise, however, merely because the parties advance conflicting interpretations of the contract. *See ACE Am. Ins. Co.*, 699 F.3d at 842; *Am. Int'l Specialty Lines Ins. Co.*, 620 F.3d at 562; *Forbau*, 876 S.W.2d at 134. In order for an ambiguity to exist, both interpretations must be reasonable. *See Am. Int'l Specialty Lines Ins. Co.*, 620 F.3d at 562; *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). If a contract remains ambiguous despite the application of these principles, the court may then consider extrinsic evidence to ascertain the parties' intent. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450-51 (Tex. 2008); *Lenape Res. Corp.*, 925 S.W.2d at 574.

On the other hand, if a contract is worded so that a court can give it a certain or definite legal meaning or interpretation, it is not ambiguous. *See ACE Am. Ins. Co.*, 699 F.3d at 842; *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *Coker*, 650 S.W.2d at 393; *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 224 S.W.3d 369, 379 (Tex. App.—Houston [1st Dist.] 2006, no pet.). When a contract is unambiguous, extrinsic evidence "'will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports.'" *David J. Sacks, P.C.*, 266 S.W.3d at 450-51 (quoting *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951)); *accord*

*Calce v. Dorado Expl., Inc.*, 309 S.W.3d 719, 742 (Tex. App.—Dallas 2010, no pet.).  The court must enforce the unambiguous language in a contract as written, and the applicable standard is the "objective intent" evidenced by the language used, rather than the subjective intent of the parties. *See Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981); *Aldridge v. Thrift Fin. Mktg., LLC*, 376 S.W.3d 877, 884 (Tex. App.—Fort Worth 2012, no pet.); *accord In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 391 F. Supp. 2d 541, 567 (S.D. Tex. 2005).

Here, Flagstar's argument is unavailing because Flagstar's letter does not unambiguously state how to accept the offer of a forbearance plan.  The fourth paragraph of the letter establishes that "You [Roland] must contact us [Flagstar] at (800) 393-4887 or in writing at the address provided below to indicate your intent to accept this offer."  Beginning in paragraph six, however, the letter states that:

> **To Accept This Offer**
> If you have notified us of your intent to accept the offer by **05/03/2013** *or, if you have not notified us and a foreclosure sale has not occurred*, you must send in your first temporarily reduced payment on or before **06/01/2013**.  Please send your Forbearance Agreement and payments to:
>
> [address]
>
> If you fail to make the first temporarily reduced payment by **06/01/2013**, this offer has been [sic] revoked and foreclosure proceedings may continue and a foreclosure sale may occur.

(emphasis added).  This language directed Roland to submit a temporarily reduced payment on or before June 1, 2013, if he had not yet notified Flagstar and a foreclosure sale had not occurred.  Thus, it appears that Roland was given the option of submitting a temporarily reduced payment by June 1, 2013, even if he had not notified Flagstar by the method described in paragraph four.  This interpretation harmonizes with the heading of the sixth paragraph as well as the later warning

that if Roland did not make his first temporarily reduced payment by June 1, 2013, the offer of forbearance would be revoked and foreclosure proceedings would continue.  By contrast, reading the Plan as specifying only one method of acceptance— that contained in paragraph four—would render the italicized language italicized a nullity.

As a result, the court finds that the terms of the contract relating to the manner of acceptance are subject to more than one reasonable interpretation.  Because of this ambiguity, the court may consider extrinsic evidence to determine the parties' intent.  Neither party, however, has submitted such evidence at this time, as this is a motion to dismiss rather than a motion for summary judgment.  Therefore at this juncture, the court declines to dismiss Roland's claim on the basis that he failed to accept the Plan.

## 2. Statute of Frauds

Flagstar argues that even if the parties agreed to the terms of the Plan, that agreement is unenforceable under Texas's statute of frauds because it was not signed by Flagstar.  The Texas statute of frauds requires certain types of contracts, including loan agreements over $50,000.00, to be in writing.  *See* TEX. BUS. & COM. CODE ANN. § 26.02(b).  Under Texas Business and Commerce Code § 26.02(a)(2), a loan agreement includes agreements to "delay repayment of money" or "to otherwise extend credit or make a financial accommodation." *Id.* § 26.02(a)(2).  A contract subject to the statute of frauds and not in writing is unenforceable under Texas law.  *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991); *Gordon v. JP Morgan Chase Bank, N.A.*, No. H-12-0528, 2012 WL 1552050, at *3 (S.D. Tex. Apr. 30, 2012).  When a modification encompasses or relates to a matter that must be in writing, the modification is unenforceable unless it is also in writing.  TEX. BUS. & COM. CODE ANN. § 26.02(a)(2); *see*

13

*Lakeway Co. v. Leon Howard, Inc.*, 585 S.W.2d 660, 662 (Tex. 1979); *Gail v. Berry*, 343 S.W.3d 520, 524 (Tex. App.—Eastland 2011, pet. denied).

Neither party disputes that the Plan is governed by § 26.02, as the amount of the original loan agreement exceeds $50,000.00 and the Plan is a modification covered by subsection (a)(2). Nor is there any argument that a writing, the letter detailing the terms of the Plan, exists. Flagstar's sole contention is that the alleged agreement to the terms of the Plan is unenforceable because Flagstar did not sign it.

Flagstar's argument does not compel dismissal of Roland's claim pursuant to § 26.02 because it is not facially apparent that the statute of frauds bars the claim.  "Unless [a plaintiff] specifically aver[s] that the agreement was oral or was unsigned, it is not facially apparent that the statute of frauds undermines [his] claim." *City Bank v. Compass Bank*, No. EP-10-CV-62-KC, 2010 WL 2680585, at *8 (W.D. Tex. July 2, 2010); *see EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470-71 (5th Cir. 2006).   Roland did not aver that the forbearance agreement memorializing the Plan was unsigned, nor does he concede that it is unsigned.  Thus, Roland's pleaded facts do not foreclose the possibility that he may produce proof of a signed contract notwithstanding Flagstar's production of an alleged unsigned forbearance agreement. *See Conceal City, LLC v. Looper Law Enforcement, LLC*, 917 F. Supp. 2d 611, 620-21 (N.D. Tex. 2013); *see also Pub. Health Equip. & Supply Co., Inc. v. Clarke Mosquito Control Prods., Inc.*, 410 F. App'x 738, 741 (5th Cir. 2010) ("In order for an agreement to violate the statute of frauds on the face of the complaint, the plaintiff must indicate that the agreement is not written.").

14

Further, the court finds that dismissal of this claim is unwarranted because the partial performance exception to the statute of frauds may apply.[2] *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 554 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.); *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied); *Carmack v. Beltway Dev. Co.*, 701 S.W.2d 37, 40 (Tex. App.—Dallas 1985, no writ).   Under the doctrine of partial performance, a contract that has been partly performed, but does not satisfy the statute of frauds, may be enforced in equity if denial would amount to fraud.   *Exxon Corp.*, 82 S.W.3d at 439.   "'The partial performance must be unequivocally referable to the agreement and corroborative of the fact that a contract actually was made.'"   *Id.* (quoting *Wiley v. Bertelsen,* 770 S.W.2d 878, 882 (Tex. App.—Texarkana 1989, no writ)).   Roland alleges that he performed his duties under the Plan by sending $360.00 payments to Flagstar.   Attached to both Roland's original petition and his response to the instant motion to dismiss is a transaction summary showing that he remitted timely payments and that Flagstar credited at least one of those payments.   These facts, which are incorporated by reference in Roland's original petition, support a plausible basis for invoking the partial performance doctrine.

Thus, because Flagstar's statute of frauds defense is not clear on the face of the complaint, the court declines to dismiss Roland's claim for breach of the terms of the Plan on this ground. *Singh v. JP Morgan Chase Bank, NA*, 4:11-CV-607, 2012 WL 669952, at *7 (E.D. Tex. Jan. 31, 2012), *report and recommendation adopted*, 4:11-CV-607, 2012 WL 669983 (E.D. Tex. Feb. 29,

---

[2] The court notes that "no Texas court has clearly stated that the partial performance exception applies to the loan agreement statute of frauds [§ 26.02]." *Montalvo v. Bank of Am. Corp.*, 864 F. Supp. 2d 567, 592 (W.D. Tex. 2012).   Nevertheless, courts in this circuit routinely examine the applicability of the exception to loan agreements such as this one. *See, e.g., Castillo v. Ocwen Loan Servicing, LLC,* No. 13-50195, 2013 WL 4840494, at *3-4 (5th Cir. Sept. 12, 2013).

2012) (declining to dismiss plaintiffs' breach of contract claim pursuant to § 26.02 because their claim for partial performance was plausible).

### 3.   Non-performance as a Defense

Lastly, Flagstar claims that Roland's failure to perform his obligations under the original note bars him from pleading a viable breach of contract claim.   Under Texas law, the essential elements of a breach of contract claim are:

(1) the existence of a valid contract;

(2) the plaintiff performed or tendered performance;

(3) the defendant breached the contract; and

(4) the plaintiff was damaged as a result of the breach.

*Triton 88, L.P.*, 411 S.W.3d at 56; *accord Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2009, pet. denied); *Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App.—Houston [1st Dist.] 2008, no pet.).   A breach occurs when a party fails or refuses to perform an act that it has expressly promised to perform.   *See Franconia Assocs. v. United States*, 536 U.S. 129, 142-43 (2002); *AMS Constr. Co. v. K.H.K. Scaffolding Houston, Inc.*, 357 S.W.3d 30, 41 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd); *Hoss v. Alardin*, 338 S.W.3d 635, 650 (Tex. App.—Dallas 2011, no pet.).

Generally, an actionable breach of contract occurs only when one of the parties to a contract commits a material breach, which substantially impairs the rights of the other contracting party.   *See Doherty v. DeVaughn*, No. 14-97-00624-CV, 1998 WL 502950, at *3 (Tex. App.—Houston [14th Dist.] Aug. 20, 1998, no pet.) (citing *Hernandez v. Gulf Grp. Lloyds*, 875

S.W.2d 691, 692 (Tex. 1994)); *see also Rooster Petroleum, LLC v. Fairways Offshore Exploration, Inc.*, No. 12-1322, 2013 WL 6274375, at *6 (E.D. La. Dec. 4, 2013).   "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 198 (Tex. 2004).   "Where one party materially breaches a contract, the non-breaching party is forced to elect between two courses of action—continuing performance or ceasing performance." *Chilton Ins. Co. v. Pate & Pate Enters. Co.*, 930 S.W.2d 877, 887-88 (Tex. App.—San Antonio 1996, writ denied) (citing *W. Irrigation Co. v. Reeves Cnty. Land Co.*, 233 S.W.2d 599, 602 (Tex. Civ. App.—El Paso 1950, no writ)); *see Myriad Dev., Inc. v. Alltech, Inc.*, 817 F. Supp. 2d 946, 963-64 (W.D. Tex. 2011).

Here, Flagstar maintains that Roland cannot satisfy the second prong of a viable breach of contract claim because he admits that he failed to perform as promised under the original note. Roland does not challenge that assertion, stating instead that Flagstar breached the parties' modified contractual agreement by pursuing foreclosure during the three-month period provided in the Plan. Thus, it appears that Roland argues that his breach of contract claim is viable because it is based on Flagstar's breach of its promise not to foreclose as stated in the Plan, not on any breach of the obligations stated in the original note. Because Roland alleges that he fulfilled his obligations under the contract as-modified, the court declines to dismiss his breach of contract claim on the grounds that the failed to perform. *See Dawkins v. Chase Bank, N.A.*, No. 3:13-CV-1308-M-BN, 2013 WL 4494527, at *3 (N.D. Tex. Aug. 22, 2013) (dismissing a breach of

contract claim for plaintiff's nonperformance where, unlike here, the plaintiff failed to allege that he performed under the parties' modified contract).

C.      Breach of Oral Contract for Loan Modification

Flagstar also presents multiple reasons to dismiss Roland's breach of contract claim based on the breach of an alleged oral agreement to modify the note.     The court agrees that Roland's allegations concerning the oral modification fail to meet the requirements of Rule 8(a).  *Iqbal*, 556 U.S. at 678; *see Lehman Bros. Holdings, Inc. v. Cornerstone Mortg. Co.*, No. H-09-0672, 2009 WL 2900740, at *5 (S.D. Tex. Aug. 31, 2009); *see also Flynn v. CIT Grp.*, 294 F. App'x 152, 154 (5th Cir. 2008).  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent dismissal . . . ." *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 348 (5th Cir. 2002); *accord Iqbal*, 556 U.S. at 678; *In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 663-64 (S.D. Tex. 2004).  There are no non-conclusory facts stated which would allow the court to determine that an oral agreement was formed, much less what its material terms may be.  Even assuming that an oral contract existed, the allegations in Roland's original petition make clear that the contract would be unenforceable under § 26.02.  Therefore, Roland's breach of contract claim based on a purported oral contract between the parties should be dismissed.

D.      Negligent Misrepresentation

Flagstar also asserts that Roland's negligent misrepresentation claim should be dismissed for the following reasons: (1) it is premised on an unactionable promise of future conduct; (2) Roland alleged justifiable reliance in a conclusory fashion; and (3) the economic loss doctrine bars

18

the claim.   Under Texas law, to recover for negligent misrepresentation, the plaintiff must establish that:

(1)    a representation was made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest;

(2)    the defendant supplied "false information" for the guidance of others in their business;

(3)    the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and

(4)    the plaintiff suffered pecuniary loss by justifiably relying on the representation.

*See Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 396-96 (5th Cir. 2005); *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 S.W.3d 802, 809 (5th Cir. 1999) (citing *Fed. Land Bank Ass'n of Tyler*, 825 S.W.2d at 442); *AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 237 (Tex. App.—Dallas 2012, no pet.); *Jeffries v. Pat A. Madison, Inc.*, 269 S.W.3d 689, 691 (Tex. App.—Eastland 2008, no pet.).

The plaintiff must prove, "among other things, that the defendant misrepresented an existing fact in the course of the defendant's business." *Miksch v. Exxon Corp.*, 979 S.W.2d 700, 706 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *see Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) (citing *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 357 (5th Cir. 1996), *cert. denied*, 519 U.S. 1078 (1997)); *GMAC Commercial Mortg. Corp. v. E. Tex. Holdings, Inc.*, 441 F. Supp. 2d 801, 808 (E.D. Tex. 2006); *see also Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 380 (Tex. App.—Houston [1st Dist.]

2007, no pet.).   Therefore, a promise to act or not to act in the future cannot form the basis of a negligent misrepresentation claim.  *See Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 439 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see also Hern Family Ltd. P'ship v. Compass Bank*, 863 F. Supp. 2d 613, 631 (S.D. Tex. 2012); *Miller*, 229 S.W.3d at 380.   Thus, a promise of future conduct—here, the alleged understanding that the foreclosure would be postponed—cannot support a negligent misrepresentation claim.  *See Thomas v. EMC Mortg. Corp.*, No. 12-10143, 2012 WL 5984943, at *3 (5th Cir. Nov. 30, 2012) ("Because representations regarding future loan modifications and foreclosure constitute 'promises of future action rather than representations of existing fact,' the negligent-misrepresentation claim was properly dismissed." (citation omitted)).

A plausible claim for negligent misrepresentation cannot rest on the few applicable facts pleaded in Roland's original petition.   The specific misrepresentations complained of include Flagstar's alleged statements that it "wanted to work with him to keep him in his house" and that a loan modification "could be performed."   At most, these representations are promises of future conduct that cannot give rise to a claim for negligent misrepresentation.   *See Bryant v. Bank of Am., N.A.*, No. 4:11-CV-448, 2012 WL 2681361, at *15-16 (E.D. Tex. June 6, 2012) (holding that "purported representations that Plaintiff would receive a loan modification or that foreclosure would not occur pending modification [are] not actionable").   Also, Roland has not pleaded any pecuniary loss that could satisfy the fourth element of a valid claim for negligent misrepresentation.   His petition simply fails to indicate what, if any, pecuniary loss Roland suffered or how his reliance on Flagstar's representations was justified.   *Steidl v. BSI Fin. Servs.*, No. H-12-3324, 2013 WL 1290132, at *10 (S.D. Tex. Mar. 26, 2013).

Additionally, based on the pleaded facts in the original petition, the economic loss rule bars Roland's negligent misrepresentation claim.  In Texas, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract."  *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007); *see also Martin K. Eby Const. Co. v. LAN/STV*, 350 S.W.3d 675, 687 (Tex. App.—Dallas 2011, pet. filed).  That is, "a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim."  *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *accord Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *Martin K. Eby Const. Co.*, 350 S.W.3d at 687.  Thus, the rule restricts contracting parties to contractual remedies for economic losses associated with their relationship, "even when the breach might be reasonably viewed as a consequence of a contracting party's negligence."  *Lamar Homes, Inc.*, 242 S.W.3d at 13 (citing *Jim Walter Homes, Inc.*, 711 S.W.2d at 618).  "The focus of the rule 'is on determining whether the injury is to the subject of the contract itself.'"  *Acad. of Skills & Knowledge, Inc. v. Charter Schs., USA, Inc.*, 260 S.W.3d 529, 541 (Tex. App.—Tyler 2008, pet. denied) (quoting *Lamar Homes, Inc.*, 242 S.W.3d at 12).  Therefore, Texas courts have held that a plaintiff cannot recover on a negligence claim when the injury results solely from a breach of contract.  *Jim Walter Homes, Inc.*, 711 S.W.2d at 618; *see also Express One Int'l Inc. v. Steinbeck*, 53 S.W.3d 895, 899 (Tex. App.—Dallas 2001, no pet.).  The burden is on the plaintiff to establish evidence of an independent injury.  *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 302 (Tex. App.—Dallas 2009, no pet.); *Sterling Chems., Inc.*, 259 S.W.3d at 797.

21

"Texas courts have specifically addressed the application of the economic loss rule to negligent misrepresentation claims," holding that a plaintiff may not bring such a claim unless he "can establish that he suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contact claim." *Sterling Chems., Inc.*, 259 S.W.3d at 797 (citing *D.S.A. Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998)); *accord Esty*, 298 S.W.3d at 301. The burden is on the plaintiff to establish evidence of an independent injury. *Esty*, 298 S.W.3d at 302; *Sterling Chems., Inc.,* 259 S.W.3d at 797.

Neither Roland's briefing nor his original petition addresses whether he has suffered an independent injury in this case. Rather, the petition states only that he has suffered actual and consequential damages. Thus, it appears Roland seeks contractual damages, which are not recoverable for negligent misrepresentation. *Miller v. CitiMortgage, Inc.*, No. 3:11-CV-2786-L, 2013 WL 4766808, at *12-13 (N.D. Tex. Sept. 5, 2013). More importantly, however, Roland's petition demonstrates that his misrepresentation claim arises entirely from Flagstar's alleged promises regarding modification of the original note. The economic loss rule bars recovery for those injuries. *Singh*, 2012 WL 669952, at *11. As a result, Roland does not state a plausible claim of negligent misrepresentation.

E.   Opportunity to Amend

Generally, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to refiling);

*accord Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003); *O'Brien v. Nat'l Prop.*

*Analysts Partners*, 936 F.2d 674, 675-76 (2d Cir. 1991).

> Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon.  These procedures alert him to the legal theory underlying the defendant's challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action.

*Neitzke*, 490 U.S. at 329-30.

Where, however, a claim is frivolous or the "complaint alleges the plaintiff's best case," a further factual statement from the plaintiff need not be allowed.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999); *see Neitzke*, 490 U.S. at 327-28; *Hart*, 199 F.3d at 248 n.6.  Moreover, when the plaintiff declares the sufficiency of his pleadings and makes no attempt to amend his complaint in response to the defendant's challenge pursuant to Rule 12(b)(6), dismissal is proper when the plaintiff's allegations fail to state a claim for which relief can be granted.  *See Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010); *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997).  In addition, a plaintiff should not be granted leave to amend after being afforded repeated opportunities to do so.  *See Torch Liquidating Trust ex rel. Bridge Assoc. L.L.C. v. Stockstill*, 561 F.3d 377, 391 (5th Cir. 2009) (finding that plaintiff had ample opportunity to cure noted defects through a prior amendment); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004) (noting that "pleading review is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right"); *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir.

2003) (holding leave to amend was properly denied where the relator had previously filed two amended complaints).  Furthermore, "where a proposed amendment would be a futile act, a court does not abuse its discretion in denying leave to amend." *SB Int'l, Inc. v. Jindal*, No. 3:06-CV-1174-G, 2007 WL 2410007, at *3 (N.D. Tex. Aug. 23, 2007) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

"'Whether leave to amend should be granted is entrusted to the sound discretion of the district court.'" *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir.), *cert. denied*, 537 U.S. 1044 (2002) (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)).  "Federal Rule of Civil Procedure 15(a) requires the trial court to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Id.* (quoting *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1162 (5th Cir. 1982), *cert. denied*, 464 U.S. 814 (1983)); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009) ("[T]here is a strong presumption in favor of granting leave to amend . . . .").  A district court may, however, refuse leave to amend if the complaint as amended would be subject to dismissal.  *Ackerson*, 589 F.3d at 208; *see Yee v. Baldwin-Price*, 325 F. App'x 375, 380 (5th Cir. 2009) ("Leave to amend may be denied on the basis of futility.").

Here, the court finds that an amendment cannot cure the defects in Roland's petition concerning the viability of his breach of oral contract claim.  As discussed above, Texas law makes unenforceable oral contracts for loan agreements greater than $50,000.00.  *See* § 26.02(b).  Therefore, granting leave to amend that claim would be futile.  The court will, however, permit Roland to amend his petition in order to cure the deficiencies in his claim for negligent misrepresentation.

III.    <u>Conclusion</u>

Consistent with the foregoing analysis, Flagstar's Motion to Dismiss is granted in part and denied in part.   Roland fails to plead plausible claims for breach of an oral contract or for negligent misrepresentation.   His breach of contract claim premised on the breach of the forbearance Plan remains pending.   Because an amendment could potentially cure the defects in Roland's negligent misrepresentation claim, Roland may file an amended complaint repleading that claim with the requisite particularity no later than fourteen (14) days from the date of this order. If he fails to do so, that claim will be dismissed with prejudice.   Roland's claim for breach of oral contract, however, will be dismissed with prejudice without granting leave to amend.

SIGNED at Beaumont, Texas, this 8th day of January, 2014.

_Marcia A. Crone_
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE